Good morning, Your Honor. Alisa Sawano-Peterson for Defendant Jeanne Marie Rowzee. Your Honor, this Court requested that the parties be ready to discuss the case of United States v. Mochella, which involves the breach of plea agreement. I will therefore first discuss that case, and there are two different aspects about Mochella, and I will discuss each of those separately. In Mochella, the government was obligated to recommend a low-end guideline sentence, and it did recommend such sentence. Mochella is distinguishable from this case, because in this case, the government implicitly recommended a higher sentence, which is something that did not occur in Mochella. This case is much more analogous to the Whitney case. In the Whitney case, the Court found that there were two breaches. The first breach regarding information obtained by the defendant during his cooperation does not apply in this case, but the second breach does apply, which is that the government breached its agreement by implicitly arguing for a sentence greater than the low-end guideline sentence that it had promised it would recommend. And although the prosecutor uttered the requisite words by recommending a sentence at the low-end of the guidelines, the additional statements constituted an argument for a higher sentence. Your client reserved the right to argue for a lower sentence, correct? Well, yes, that was the second aspect of Mochella. I was getting to it. I just first wanted to bring to the Court's attention how similar this case is to the Whitney case, in that here the government referred at least twice to the statement, to the co-conspirators' sentence of 120 months. And the Court did not need that information because the Court did not ask the government for that information. That information was provided in the sentencing papers. Well, it's hardly unusual, that argument, to say something that's already been said in papers. Indeed, in our Court, if it hasn't been said in the brief, we don't want to hear that argument. So the fact that the Court might have received the information doesn't tell us that there's not reason to urge the Court to focus on that information or be aware of the information. Right. But it was in the context where the Court was saying it was concerned about variance, you know, in terms of the various sentences. And then there was absolutely no reason for the government to again mention that, and again in referring to the much higher sentence that Mr. Howell said. Well, when you were in court, did you say anything that had already occurred? I don't know if you represented a trial. When your client's counsel was in court, was anything said that repeated what had previously been said in written submissions? That was said in submissions? In a sentencing memorandum or anything else? Was everything said in court by your client's counsel new to the Court, something previously unknown by the Court? Was everything said – was everything that was said unknown to the Court? Well, I'm caught in pronouns. To begin with, were you trial counsel for your client? No. Okay. Your client's lawyer made a presentation to the Court. Is that correct? Did that oral presentation contain entirely new information, or did it refer to things that the Court was previously – had previously received in writing or some other submission? Probably repeated things that were in writing. So why is it wrong for the government to repeat something in writing that's previously been submitted in writing? Because it was more than that. Okay. Here, the Court was basically arguing – the Court was really concerned about the disparity in the sentence between Halstead and the defendant. And so it was in the context of the Court being concerned about the disparity in the sentence. And it was also said twice. And a prosecutor has to be especially careful when you have a plea agreement and you're supposed to recommend a certain sentence. A prosecutor really has to be careful about what they say that they don't breach that agreement. So it's a little bit of a different issue. And here, it was in the context of saying that there was a disparity between Mr. Halstead's sentence and Rozzi's sentence. And it was mentioned twice. And on top of that, the government said that the 70 months is the minimum sentence the defendant should receive. So in the Moschella case – Well, isn't the reference to minimum a response to Ms. Rozzi's argument? Quite proper, because she reserved the right to do that. But isn't that responsive to her contention, well, the government is recommending a 70-month sentence. I am permitted to argue for a lesser sentence, and I'm arguing for a 33-month sentence. I think I should get a 33-month sentence. And in response to that, the government says, no, the minimum she should get is the 70-month sentence that we are recommending. What else could the government say that wouldn't offend your position in order to justify 70 months versus 33? The government could have done what the court did – I mean, what the government did in Moschella, which is to say the sentence should be the recommended sentence. Here, the government went beyond that. It didn't say the sentence should be 70 months, and there's no reason why the government shouldn't have said in response the sentence should be 70 months. Instead, the government said that was the minimum, which implies that the sentence should be higher than that. It would be appropriate for the sentence to be higher than the 70 months. So it was implicitly arguing for a higher sentence. And also, there is a provision in this plea agreement, but it's different than the one in Moschella, because in this plea agreement, both parties reserve the right to argue for a sentence outside the sentencing range established by the sentencing guidelines. This provision is ambiguous, because basically it deprives the defendant of the benefit of her bargain, because if this provision is construed in a certain way, it means that the government could say, yes, we recommend a 70-month sentence, but we also recommend a 120-month non-guideline sentence at the same time, and that would nullify the defendant's benefit of the bargain. The reason why defendants give up the valuable rights and enter into a plea agreement is that they are expecting that the prosecutor will recommend a lower sentence. But if the prosecutor is free to recommend even a higher sentence beyond the guidelines, that completely nullifies the bargain. Counsel, isn't, in order to fall within this Court's precedent, finding a breach of the plea agreement that is not expressed and implicit, doesn't this Court have to leave your argument with the feeling that the prosecutor recommended 70 months, but with a wink and a nod, and was, in effect, telling the judge, look, we really think you ought to give more, but, you know, we bound ourselves and we're going to stay with it? And unless we can find the wink and the nod in something that was said or done, don't we have to find that there's no plain error? No, I would disagree with that because there are cases that say that even if there's a mistake that's made, it's inadvertent, it doesn't mean that there's not a breach of plea agreement. It doesn't mean that there shouldn't be specific performance because this kind of thing affects the defendant's substantial rights. If the Court is influenced by the prosecutor even inadvertently mentioning a piece of information and the defendant receives a higher sentence, that does affect the defendant's substantial rights. So there are cases that say, I believe, Santabello and other cases that say it doesn't matter whether it was inadvertent. And in this case, there was an objection to what the government's comment. And the defendant's attorney at the very end said that he objects to the 70 months being the minimum sentence because that's a breach of the plea agreement. And it's the defendant's position that basically he was objecting and saying that there was a breach of the plea agreement. Now, there were a few additional comments that were made that the defendant's attorney did not refer to, but it's the defendant's position that that's basically all part of it. He objected in saying that there was a breach of the agreement. And how did the trial court respond to the objection? The trial court, you know, at the point, the trial court did not respond to that. So the trial court did not, you know, make a finding as saying at that point, as I recall, or no, I'm sorry. I'm getting a little confused. I believe, I'm not sure at which point, but when the prosecutor said that he had recommended, you know, the 70-month sentence, that was the sentence that he had recommended. Could you address the issue you raised about the mental health condition and supervised release? What's your concern there? My concern is that it is overbroad. I mean, there's two concerns. One is that it's really not necessary because she's had a history of seeking her own treatment. But the other is that the condition is overbroad because it could include, because it's overbroad, it could include hospitalization. Where do you get that? It said the defendant shall participate in mental health treatment, which may include evaluation and counseling, until discharged from the treatment by the treatment provider with the approval of the probation officer. So where do you get that the court is contemplating hospitalization? Well, it doesn't exclude it. I mean, it doesn't say it's only limited to counseling. So it's only because it could be overbroad. I mean, if the court construes it as not including hospitalization. Has the government urged that it includes inpatient treatment? No. If there were an order for, let's suppose, a probation officer in response to a psychiatrist or a psychologist or whatever recommended or that your client be put into inpatient hospitalization, would she be without any remedy? Well, that's the question. I mean, it appears that that might be a possibility. Where does it give? I don't see any authorization in there for hospitalization, because it only talks about the probation officer, for example, having authority to discharge her. But there's no language of commitment there. I'm familiar with medication cases, for example. And we have others where there's a liberty interest at stake, and we construe them narrowly. But so I'm just trying to find out what your concern is in this language that would imply that without any authorization from the district court that it could be inpatient treatment. Well, it just basically says since. I read it. The defendant shall participate in mental health treatment, which may include evaluation and counseling, until discharged from the treatment by the treatment provider with the approval of the probation officer. Well, it says it may include, you know, counseling, but it doesn't exclude anything else. So my question is, does it also include something more? Counsel, Ms. Rousey has in the past, in fact, I think continuing up until the time of sentencing, had consulted mental health practitioners and received counseling from them. There's nothing in the record to suggest, however, that she's ever been committed, that she has any major psychosis or anything that would justify involuntary commitment, is there? No. It's just that because there's a certain amount of coercion when something is a supervised release condition, and so they're saying that, you know, if she needs to seek this kind of treatment and the provider says she needs to be hospitalized, is that, you know, will they have to go through a whole other thing, or will she be forced to accept whatever treatment there is because it's a supervised release condition? That's my only question. If the court believes it's narrowly tailored and it doesn't state that. Did you find any – now, clearly, some men and women without past serious mental health problems faced with incarceration may be temporarily suicidal, but did you find any case law that would permit a probation officer to authorize the commitment of a supervisee without a hearing? No, I have not, Your Honor. And if, in the context of supervised release, the question of committing somebody because they were suicidal came up, wouldn't that person be entitled to the same protections that anyone would if a physician thought she was, you know, at immediate risk? I would certainly hope that she would be. And you didn't find any case law to the contrary, did you? No, I did not find any case law that said the probation officer has the power to do that. Okay. And I also wanted to talk about the insufficient factual basis arguments. Well, you've exceeded your time, so. Can I ask one question? I'd like to reserve a little time to. May I ask one question before she sits down? Sure. Just one. One of the issues in this case is the amount of restitution that was specified. It's my understanding from the record, and correct me if I'm in error, that part of the way that Ms. Rousey showed that she was rehabilitated and showed that she was entitled to a fair sentence was that she turned over a lot of her assets and in fact pursued a former person that she was in a relationship with to cough up assets allegedly traceable to this activity. Is there anything in the record to show that Ms. Rousey has assets available to pay the amount of the restitution order? There's nothing in the record that shows that at this time she could pay that large amount of restitution, no. All right. Or any approximation of it? There's nothing in the record that would show that she could pay anything, you know, reaching millions of dollars. Yeah. And is it, I notice some of the men and women who claim they were defrauded by the operation that Ms. Rousey was part of said she had offshore bank accounts and everything. There's no evidence of that in the record, is there? No, there's not. Okay. Thank you. Thank you, Your Honor. Thank you. Please have a little bit of time. You have no time to reserve. Okay. Good morning. May it please the Court. Greg Staples for the United States. I don't believe I have anything to add that's not already in my brief. All right. May I ask a question, then? The last question I put to counsel for Ms. Rousey had to do with the restitution. Now, the restitution amount set was very large. And there is evidence in the record that Ms. Rousey surrendered significant assets in the lead-up to her sentencing in this case. Apparently, she was initially charged, and a significant amount of time went by, and that she and one other co-defendant cooperated with men and women allegedly harmed by this operation to try to get their money back. My question to you is, is there any evidence in the record that would support an inference that Ms. Rousey could pay the restitution that was ordered? Or any significant approximation thereof? No. What there is in the record, and I believe this would be found mostly in her sentencing position, was a description of how she had pretty much been reduced to destitution. So what do you do in a case like this where unquestionably a man or woman participated in theft of millions but are in fact destitute? How do you handle restitution, in your opinion? The best you can hope for is a modest wage garnishment if she were to come out of prison and get a job. Now, she's been disbarred. She's a long in years, and she's going to serve a significant period of time. If I sense where you're going, the reality is no one's going to get any money back. You stated that she had given significant assets back. I did address this during the sentencing hearing to state that I believe that was worthless. What it consisted of was mostly shares in what were shell companies. The people that she was doing business with were very good at setting up fictitious entities through which they would cycle money. What she turned over was essentially shares in these worthless companies. And I believe it's in the sentencing transcript that one of the lawyers with whom she was working with stated, essentially, no, we've not gotten very much back, including from her former partner. But they did indicate that she tried to help them. Once the barn door was open and the horses were out, yes, she tried to help. But it was far too little, far too late. And the government does not have any information, does it, that Ms. Rousey, in fact, has extensive offshore accounts? We traced the lead that we were given concerning money that was perhaps possibly in Brazil, and there was nothing there. Okay. Can I ask you to comment on the government's view of condition five of the supervised release, the mental health? Is there any ambiguity in there that needs narrowing down with respect to institutionalization? I do not believe it's ambiguous. I do not read it as empowering the probation officer on her own to institutionalize a defendant. Well, you say on her own. It does say that the probation officer has to approve discharge, and discharge does connote in some respect some form of hospitalization. You are discharged from a hospital. So aside from that language, that does imply that somebody might have put her into a hospital and the discharge therefrom would have to come from the probation officer. That is a possible reading. I do not read it that way. I would understand discharge to also include discharge from a mental health treatment program or counseling. Yes, I understand it can, but I was saying the one verb there has that connotation. It could go the other direction. It could be discharge from a program, but it could be discharge from a hospital. The government doesn't take that position. But when you say that the probation officer couldn't do it on her or his own, who else would be involved in the decision? The court. Not just the physician. In my experience, and I have no case to cite for this, but in my experience, if a probation officer was to decide that a probationer needed to be institutionalized against her will, in my experience, they will file something with the court to bring it to the court's attention and have the court order it. That was my understanding. And just to go back to the earlier question concerning restitution, perhaps futility of it, I would like to point out that there is a benefit to the victims for having the restitution order entered with them listed as victims for tax purposes. It often comes up that they are then able to declare a loss on their taxes, even though they don't get the money back. So I didn't want to leave the impression that we are engaging in otherwise futile activity by getting these very large restitution orders against defendants who really don't have much of a chance to pay them back. Thank you very much. Thank you. We thank both counsel for the argument. The case just argued is submitted.
judges: Singleton, Fisher, Clifton